FRANK T. PERANO, doing                )
business as GSP Management             )      Civil Action
Company,                              )      No. 10-cv-01623
                                      )
                Plaintiff             )
                                      )
        v.                            )
                                      )
SEAN ARBAUGH,                         )
RANDY KING                            )
and LEE MCDONNELL                     )
                                      )
                Defendants            )

                              *   *   *

APPEARANCES:

        DANIEL F. SCHRANGHAMER, ESQUIRE
            On behalf of plaintiff

        DENNIS A. WHITAKER, ESQUIRE
        SUSAN SHINKMAN, ESQUIRE
            On behalf of defendants

                              *   *   *

                        O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on Defendants' Motion

to Dismiss Plaintiff's Amended Complaint filed together with a

brief on June 11, 2010.[1]  Plaintiff filed a responsive brief on

---

[1]      The brief was entitled Brief in Support of Defendants' Motion to
Dismiss the Amended Complaint.

July 2, 2010.[2]  On July 29, 2010 defendants filed a reply with permission.[3]

For the reasons expressed below, defendants' motion to dismiss plaintiff's Amended Complaint is granted in part and denied in part.  Defendants' motion to dismiss plaintiff's procedural due process claim is granted.  Defendants' motion to dismiss plaintiff's conspiracy claim is granted.  Defendants' motion to dismiss plaintiff's claim for intentional interference with contractual relations is granted.

Defendants' motion to dismiss plaintiff's Amended Complaint is also granted without prejudice for plaintiff to file a more specific second amended complaint regarding plaintiff's Equal Protection and First Amendment retaliation claims brought pursuant to 42 U.S.C. § 1983.

Defendant Lee McDonnell's motion to dismiss is denied. In addition, defendants' motion to dismiss plaintiff's claim for injunctive relief is denied.  Finally, defendants' motion to dismiss in the nature of a motion to abstain, is denied.

### JURISDICTION

Jurisdiction in this case is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This court has

---

[2]     Plaintiff's brief was titled Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss.

[3]     Defendants' reply was titled Defendants' Reply Brief in Support of Their Motion to Dismiss the Amended Complaint.

supplemental jurisdiction over plaintiff's pendent state-law claims.  See 28 U.S.C. § 1367.

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred within Berks County, Pennsylvania, which is located within this judicial district.

## PLAINTIFF'S AMENDED COMPLAINT

On May 10, 2010 plaintiff Frank T. Perano, doing business as GSP Management Company, filed a three-count Amended Complaint.[4]  In the Amended Complaint, plaintiff asserted claims pursuant to 42 U.S.C. §§ 1983 and 1985 alleging that defendants Sean Arbaugh, Randy King and Lee McDonnell violated his civil rights and intentionally interfered with contractual relations under Pennsylvania state law.  Plaintiff requests an award of damages, attorneys' fees, and injunctive relief against defendants.

Specifically, Count I of plaintiff's Amended Complaint brings constitutional claims under 42 U.S.C. § 1983, alleging that defendants acted in their individual capacities to deprive plaintiff of his Constitutional rights to procedural due process and Equal Protection, and violated his right to free speech under

---

[4]     Plaintiff amended his initial Complaint, which was filed April 13, 2010, and alleged the same three counts.

the First Amendment to the United States Constitution by retaliating against him for exercising his free speech rights.

Count II is a claim pursuant to 42 U.S.C. § 1985 alleging that defendants, acting in their individual capacities, engaged in an unlawful conspiracy to deprive plaintiff of his Constitutional rights.

Count III avers a cause of action for intentional interference with contractual relations pursuant to Pennsylvania common law.  It alleges that defendants acted in their individual capacities to unlawfully interfere with the November 4, 1999 Consent Order between plaintiff and Tilden Township, Pennsylvania.

<u>STANDARD OF REVIEW</u>

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."[5]  Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the

_____

[5]     Defendants' motion for dismissal on the basis of abstention is brought pursuant to Federal Rule of Civil Procedure Rule 12(b)(1). (Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss"), filed June 11, 2010, page 6.)  However, the United States Court of Appeals for the Third Circuit has stated that a dismissal on abstention grounds, without the retention of jurisdiction, is "in the nature of a dismissal under Fed.R.Civ.P. 12(b)(6)."  <u>Heritage Farms, Inc. v. Solebury Township</u>, 671 F.2d 743, 745 (3d Cir. 1982).  <u>But see Coles v. City of Philadelphia</u>, 145 F.Supp.2d 646, 649 (E.D.Pa. 2001) (Joyner, J.); <u>Bell Atlantic-Pennsylvania, Inc. v. Pennsylvania Public Utility Commission</u>, 107 F.Supp.2d 653, 659 (E.D.Pa. 2000) (Katz, S.J.).

Because the motion for dismissal on abstention grounds can be resolved by reviewing matters of public record and state judicial proceedings, it is appropriate to address this argument pursuant to the standard of review applicable to Rule 12(b)(6).

complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102,

2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by

<u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, in ruling on a motion to dismiss, the court

relies on the complaint, attached exhibits, and matters of public

record, including other judicial proceedings.  <u>Sands v.

McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil

Procedure 9, a complaint is sufficient if it complies with

Rule 8(a)(2), which requires "a short and plain statement of the

claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2).  Rule 8(a)(2) "[does] not require

heightened fact pleading of specifics, but only enough facts to

state a claim to relief that is plausible on its face."  <u>Twombly</u>,

550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[6]

In determining whether a plaintiff's complaint is

sufficient, the court must "accept all factual allegations as

---

[6]      The Supreme Court's Opinion in <u>Ashcroft v. Iqbal</u>, __U.S. __, __,
129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the
"facial plausibility" pleading standard set forth in <u>Twombly</u> applies to all
civil suits in the federal courts.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203,
210 (3d Cir. 2009).  This showing of facial plausibility then "allows the
court to draw the reasonable inference that the defendant is liable for the
misconduct alleged," and that the plaintiff is entitled to relief.  <u>Fowler</u>,
578 F.3d at 210 (quoting <u>Iqbal</u>, __ U.S. at __, 129 S.Ct. at 1949,
173 L.Ed.2d at 884).  As the Supreme Court explained in <u>Iqbal</u>, "[t]he
plausibility standard is not akin to a 'probability requirement,' but it asks
for more than a sheer possibility that the defendant acted unlawfully."
<u>Iqbal</u>,  U.S. at __, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief." Fowler, 578 F.3d at 210 (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or 'bare-bones' allegations will [not] survive a motion to dismiss," Fowler, 578 F.3d at 210, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips, 515 F.3d at 231. Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotation omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. Fowler, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a

"plausible claim for relief."  <u>Id.</u> at 211 (quoting <u>Iqbal</u>,
__ U.S. at __, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible."  <u>Iqbal</u>,
__ U.S. at __, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885 (internal quotations omitted).

A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

<u>FACTS</u>

Accepting as true all of the well-pled facts in plaintiff's Amended Complaint, and drawing all reasonable inferences in favor of plaintiff as the non-moving party, which I am required to do under the above standard of review, the pertinent facts are as follows.

Plaintiff Frank T. Perano, doing business as GSP Management Company, owns and operates mobile home parks in

Pennsylvania.[7]  Pleasant Hills is one such mobile home park, located in Tilden Township, Berks County, Pennsylvania.[8]

Pleasant Hills was issued a permit by the Pennsylvania Department of Environmental Protection ("PADEP") allowing plaintiff to operate a private sewage treatment plant.[9] Plaintiff successfully renewed the permit for the private sewage treatment plant in 1995, 2000, and 2005.[10]  In addition, on November 4, 1999 plaintiff entered into a Consent Order with Tilden Township which upheld plaintiff's right to operate a private sewage treatment plant at Pleasant Hills.[11]

Defendants Sean Arbaugh, Randy King, and Lee McDonnell are employees of PADEP.[12]  In early 2008, Tilden Township applied for financial aid from the Pennsylvania Infrastructure Investment Authority for sewer infrastructure improvements in the Township.[13]  This request was denied because Tilden Township's public sewer system did not score high enough on the priority scale.[14]

---

[7]     Amended Complaint, paragraph 10.

[8]     Amended Complaint, paragraph 11.

[9]     Id.

[10]    Amended Complaint, paragraph 28.

[11]    Amended Complaint, paragraph 27.

[12]    Amended Complaint, paragraphs 14-16.

[13]    Amended Complaint, paragraphs 31 and 32.

[14]    Amended Complaint, paragraph 33.

Defendants determined they could help increase Tilden Township's chances of receiving such financial aid by requiring plaintiff to connect to Tilden Township's public sewer system, thereby having the effect of closing Pleasant Hill's private sewage treatment plant.[15] Defendants also had a desire for retribution against plaintiff because of his past opposition to their enforcement actions as employees of PADEP.[16]

On February 5, 2008 defendants met with plaintiff, ostensibly to discuss compliance issues at Pleasant Hills.[17] At that meeting, defendant Arbaugh made numerous misstatements regarding the sewage capacity and compliance status of Pleasant Hills.[18] Defendants Arbaugh and King announced that PADEP would not allow renewal of Pleasant Hill's private sewage treatment plant permit when it expired in 2010.[19] Plaintiff had not yet submitted an application for the permit's renewal.[20] On February 5, 2008, Tilden Township did not have a public sewer available to Pleasant Hills, nor did it have any plans to build such a sewer.[21]

----

[15]    Amended Complaint, paragraphs 34 and 35.

[16]    Amended Complaint, paragraph 37.

[17]    Amended Complaint, paragraph 38.

[18]    Amended Complaint, paragraphs 59-69.

[19]    Amended Complaint, paragraph 39.

[20]    Amended Complaint, paragraph 46.

[21]    Amended Complaint, paragraph 40.

Plaintiff took actions to oppose the decisions of PADEP and defendants, including filing appeals, together with commencement of litigation and lobbying efforts against PADEP and defendants.[22] Based upon their personal animus toward plaintiff, defendants retaliated against plaintiff for this opposition.[23]

On April 15, 2009, defendants caused PADEP to issue an Order to Tilden Township, which explained that PADEP would not renew Pleasant Hill's private sewage treatment plant permit once it expired.[24] Furthermore, the Order required Tilden Township to revise its Act 537 Sewage Facilities Plan to meet the future sewage disposal needs of Pleasant Hills.[25]

On March 9, 2010, defendants caused PADEP to enter into a Consent Order and Agreement with Tilden Township. In that Consent Order and Agreement, Tilden Township agreed to provide a public sewer to service the needs of Pleasant Hills.[26]

Additionally, the false statements made by defendant Arbaugh during the meeting on February 5, 2008, which Mr. Arbaugh repeated or caused to be repeated after that date, led Tilden

---

[22]    Amended Complaint, paragraphs 22 and 108.

[23]    Amended Complaint, paragraphs 23-25.

[24]    Amended Complaint, paragraph 49 and Exhibit 2.

[25]    Amended Complaint, paragraph 50 and Exhibit 2, page 2. A municipality is required to have an Act 537 Sewage Facilities Plan pursuant to Section 5 of the Sewage Facilities Act, Act of July 22, 1974, P.L. 621, § 3, as amended, 35 P.S. § 750.5.

[26]    Amended Complaint, paragraphs 55-58 and Exhibit 3, paragraph 3(c).

Township to conclude that Pleasant Hills was out of compliance with PADEP orders and lacked the legal capacity for expansion.[27] As a result, Tilden Township denied building permits to new homeowners seeking to move into Pleasant Hills.[28]

Despite plaintiff's repeated requests,[29] defendant Arbaugh has not retracted these false statements.[30] Therefore, Tilden Township continues to consider Pleasant Hills not to be in compliance.[31]

Defendants also increased enforcement efforts at Cedar Manor, another mobile home park owned by plaintiff, in order to pressure plaintiff to connect Pleasant Hills to a public sewer.[32] Cedar Manor is located in Londonderry Township, Dauphin County, Pennsylvania.[33]

Cedar Manor had a private sewage treatment plant permit from PADEP which included a compliance schedule.[34] Pursuant to this compliance schedule, plaintiff invested $100,000 in

---

[27]    Amended Complaint, paragraphs 68 and 69.

[28]    Amended Complaint, paragraphs 70 and 71.

[29]    Amended Complaint, paragraph 72.

[30]    Amended Complaint, paragraphs 73-75.

[31]    Amended Complaint, paragraph 76.

[32]    Amended Complaint, paragraph 92.

[33]    Amended Complaint, paragraph 11.

[34]    Amended Complaint, paragraph 90.

improvements to the sewage system.[35]  However, in August 2008, at the behest of defendant Arbaugh, PADEP required over one million dollars in different, and additional, improvements.  This requirement put at risk the investment plaintiff had already made under the compliance schedule.[36]  Defendant Arbaugh drafted a Consent Decree and required plaintiff to accept it notwithstanding plaintiff's contention that the Consent Decree was in direct conflict with the PADEP private sewage treatment plant permit.[37]

Defendant Arbaugh has taken actions to make Cedar Manor and Pleasant Hills appear to be in chronic non-compliance with PADEP orders.[38]  For example, his inspections of Pleasant Hills yielded statistically high levels of violations.[39]  He also failed to draft positive inspection reports when no violations were found and plaintiff's facilities were in compliance.[40]

Defendant Arbaugh participated in drafting stream surveys and proposed consent orders which lacked factual and scientific bases.[41]  In addition, he cited plaintiff for the

---

[35]  Amended Complaint, paragraph 90.

[36]  Amended Complaint, paragraph 91.

[37]  Amended Complaint, paragraphs 93 and 94.

[38]  Amended Complaint, paragraphs 95 and 96.

[39]  Amended Complaint, paragraph 98.

[40]  Amended Complaint, paragraph 96.

[41]  Amended Complaint, paragraph 97.

methods plaintiff used to clean a discharge ditch, although defendant Arbaugh had approved the same methods two years earlier.[42]

Plaintiff has also been subject to the imposition of heavy fines for minor violations, which are far in excess of the civil penalty amounts sought from other entities for more severe violations.[43]

Finally, in retribution for plaintiff's complaints to PADEP about the actions of a colleague of defendant Arbaugh[44], Mr. Arbaugh escalated enforcement efforts at plaintiff's facilities.  This colleague was a PADEP employee, Cheryl Sansoni. Ms. Sansoni was a tenant at another mobile home park owned by plaintiff, Alex Acres Mobile Home Park, located in Halifax Township, Dauphin County, Pennsylvania.[45]

In late 2008, plaintiff took actions to evict Ms. Sansoni because she violated the mobile home park rules.[46]  In an effort to resolve the landlord-tenant dispute, on November 20, 2008 Ms. Sansoni made overt threats to plaintiff that PADEP would

---

[42]     Amended Complaint, paragraph 99.

[43]     Amended Complaint, paragraphs 91 and 102.

[44]     Amended Complaint, paragraph 87.

[45]     Amended Complaint, paragraph 81.

[46]     Amended Complaint, paragraph 82.

continue to critically investigate his other facilities and find additional violations.[47]

Plaintiff reported Ms. Sansoni's threats to PADEP. As a result, she was disciplined.[48]

Defendant Arbaugh had regular contact with Ms. Sansoni. In retaliation for plaintiff's complaint about her, Mr. Arbaugh has increasingly targeted plaintiff's facilities and encouraged other PADEP employees to do the same.[49]

## DISCUSSION

### Request for Injunctive Relief

Defendants contend that plaintiff's request for injunctive relief should be dismissed. Defendants allege that injunctive relief can be granted only where it will forestall future violations of plaintiff's rights. Defendants argue that because granting injunctive relief against defendants in their individual capacities will not prevent future violations of plaintiff's property interest by PADEP employees acting in their official capacities, plaintiff cannot establish that an injunction would forestall future violations of his rights.

Injunctive relief can be granted as a remedy for violation of a plaintiff's civil rights in an action brought

---

[47]    Amended Complaint, paragraphs 84 and 85.

[48]    Amended Complaint, paragraph 86.

[49]    Amended Complaint, paragraph 87.

pursuant to 42 U.S.C. § 1983.  <u>Rizzo v. Goode</u>, 423 U.S. 362, 378-380, 96 S.Ct. 598, 607-609, 46 L.Ed.2d 561, 573-575 (1976). The purpose of an injunction is to "forestall future violations." <u>United States v. Oregon State Medical Society</u>, 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978, 984 (1952).

"All it takes to make the cause of action for relief by injunction is a real threat of future violation or a contemporary violation of a nature likely to continue or recur."  <u>Id.</u>  When a plaintiff alleges that defendants have engaged in a continuing practice, "courts will not assume that it has been abandoned without clear proof."  343 U.S. at 333, 72 S.Ct. at 695-696, 96 L.Ed. at 984.

Plaintiff seeks injunctive relief "requiring defendants to retract the false information they have spread or caused, or allowed to be spread or caused about plaintiff, prohibiting defendants from participating in [PADEP] enforcement activities concerning and against him, and barring defendants from plaintiff's property."[50]

Plaintiff alleges that defendants engaged in a continuing practice of retaliatory enforcement action, including the propagation of false information about the compliance status of his mobile home parks.  Because of these practices, plaintiff alleges it will prevent future harm to him if defendants

---

[50]     Amended Complaint, paragraph 8.

(1) retract these false statements;[51] (2) do not participate in any PADEP enforcement activities concerning him;[52] and (3) are barred from his property.[53]  Accordingly, I conclude that plaintiff has properly alleged that injunctive relief will forestall future violations of his rights.

Defendants cite <u>Spicer v. Hilton</u>, 618 F.2d 232, 241 (3d Cir. 1980), for the proposition that plaintiff cannot be granted injunctive relief against defendants in their individual capacities.  Defendants argue that <u>Spicer</u> mandates this result for the following reasons.

Defendants contend that granting an injunction against them in their individual capacities would be a nullity because all of their actions are performed in their official, not their individual, capacities.  If plaintiff were to allege any future violations of his property rights, they would have to be based on acts or omissions done by defendants in their official capacities.  However, <u>Spicer</u> is inapposite to plaintiff's claim.

In <u>Spicer</u>, plaintiff, a prisoner, brought suit against the State of New Jersey for an injunction that would require the state to provide him with specialized medical treatment. 618 F.2d at 233.  The district court held that plaintiff's

---

[51]     Amended Complaint, paragraph 116.

[52]     Amended Complaint, paragraph 117.

[53]     Amended Complaint, paragraph 118.

requested relief was barred by the Eleventh Amendment of the United States Constitution.  Id.  In a suit pursuant to section 1983 for prospective injunctive relief, the United States Court of Appeals for the Third Circuit remanded plaintiff's case, providing plaintiff the opportunity to substitute the responsible state official as a party instead of the State of New Jersey. Id. at 239 and 241.

In the case before this court, unlike Spicer, plaintiff is seeking prospective injunctive relief against defendants in their individual capacities.  Spicer does not stand for the proposition that injunctive relief cannot be granted against government employees in their individual capacities. Accordingly, I find that defendants' arguments lack merit, and I conclude that plaintiff has stated a claim for prospective injunctive relief.

### Count I (42 U.S.C. § 1983)

Count I of plaintiff's Amended Complaint asserts constitutional claims actionable against defendants through 42 U.S.C. § 1983.  Section 1983 is an enabling statute that does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights. Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000).

To state a claim under section 1983, a plaintiff must allege that a defendant acting under color of state law deprived

plaintiff of a federal constitutional or statutory right.
Gruenke, 225 F.3d at 298.  A defendant acts under color of state
law when "there is such a close nexus between the State and the
challenged action that seemingly private behavior may be fairly
treated as that of the State itself."  Adams v. Teamsters Local
115, 214 Fed.Appx. 167, 172 (3d Cir. 2007) (internal quotation
omitted).  Count I brings causes of action for First Amendment
Retaliation, denial of Equal Protection, and deprivation of
procedural due process.

### A. Dismissal of Defendant McDonnell

Defendants argue that Lee McDonnell must be dismissed
as a defendant because the Amended Complaint bases plaintiff's
Section 1983 claim against Mr. McDonnell solely on the basis of
respondeat superior liability.

To state a claim against a defendant under Section
1983, an individual government defendant must have personal
involvement in the alleged wrongdoing.  Liability cannot be
predicated solely on the operation of respondeat superior.
Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting
Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Such
personal involvement can be shown "through allegations of
personal direction or of actual knowledge and acquiescence."
Rode, 845 F.2d at 1207.

In light of the United States Supreme Court's decision in Iqbal, ___ U.S. at ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 883, which rejected the theory that a supervisor could be liable based on knowledge of, and acquiescence in, his subordinate's acts, courts have questioned whether the "knowledge and acquiescence" standard set out in Rode remains good law.  See Bayer v. Monroe County Children & Youth Services, 577 F.3d 186, 191 n.5 (3d Cir. 2009); Ramos-Vazquez v. Primecare Medical, Inc., 2010 U.S.Dist. LEXIS 105867, at *37-39 (E.D.Pa. Sept. 30, 2010) (Rufe, J.).

Nonetheless, in this case plaintiff's Amended Complaint alleges defendant McDonnell had personal knowledge, without relying on supervisory liability.  Plaintiff alleges that Mr. McDonnell not only supervised defendants King and Arbaugh, but also approved and directed all of their actions relevant to plaintiff's claims.[54]  In addition, plaintiff's Amended Complaint states not only that defendant McDonnell had authority over the decision to deny plaintiff's private sewage treatment plant permit, but also that he knew about, helped formulate, orchestrated, and approved announcing, the decision to plaintiff.[55]

---

[54]     Amended Complaint, paragraph 17.

[55]     Amended Complaint, paragraph 42.

Moreover, there are numerous places in the Amended
Complaint where plaintiff refers to all three defendants
collectively.  For example, the Amended Complaint alleges that
all three defendants have selectively targeted plaintiff's mobile
home parks for unduly strict enforcement of water quality laws
and regulations,[56] and that all three defendants used their
positions in PADEP to retaliate against, and punish, plaintiff
for exercising his constitutionally protected rights.[57]

Accordingly, defendants' contention that defendant
McDonnell is sued only in a respondeat superior role is belied by
the allegations in the Amended Complaint.  Therefore, defendant
McDonnell's motion to dismiss is denied because plaintiff does
allege Mr. McDonnell's personal involvement in the wrongdoing
against him.

### B. First Amendment Retaliation

Count I of plaintiff's Amended Complaint alleges
defendants engaged in First Amendment retaliation.  Defendants
contend that plaintiff has not established a prima facie case for
First Amendment retaliation.

To state a claim for First Amendment retaliation,
plaintiff must show: (1) that he engaged in constitutionally-
protected activity; (2) that the government responded with

---

[56]     Amended Complaint, paragraphs 21 and 102.

[57]     Amended Complaint, paragraphs 25, 54, 103-104, and 109-114.

-20-

retaliation; and (3) that the protected activity caused the retaliation.  Eichenlaub v. Township of Indiana, 385 F.3d 274, 282 (3d Cir. 2004).  Defendants may defeat a retaliation claim by showing they "would have taken the same action even if the plaintiff had not engaged in the protected activity".  Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

While the three-prong test originated in the public employment context, Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), courts have extended the analysis beyond public employees and have applied it to speech by private citizens.  See Eichenlaub, 385 F.3d at 282-284.

In making out the constitutionally-protected activity prong, a plaintiff can show that his rights under the Petition Clause have been violated.  U.S. Const. amend. I, cl. 6; Foraker v. Chaffinch, 501 F.3d 231, 237 (3d Cir. 2007).  The Petition Clause of the First Amendment "[i]mposes on the United States an obligation to have at least some channel open for those who seek redress for perceived grievances."  San Filippo v. Bongiovanni, 30 F.3d 424, 442 (3d Cir. 1994).

When exercising the right to petition through a formal mechanism, such as by filing lawsuits, grievances, and workers compensation claims, the petitioner is protected from retaliation

for that activity.[58]  This right to petition extends to all

branches of government, including administrative agencies.

<u>California Motor Transport Co. v. Trucking Unlimited</u>,

404 U.S. 508, 510, 92 S.Ct. 609, 611-612, 30 L.Ed.2d 642, 646

---

[58]     The United States Court of Appeals for the Third Circuit has not considered the Petition Clause in the context of a claim brought by a non-public employee for First Amendment retaliation.  The Court in <u>San Filippo</u> only considered the Petition Clause claim of a government employee.  The Court held that government employees with retaliation claims pursuant to the Petition Clause are not limited to petitions involving matters of "public concern," unlike claims pursuant to the Free Speech clause, which are so limited.  <u>San Filippo</u>, 30 F.3d at 442.

       The Court had the opportunity to address the issue in <u>Eichenlaub</u>, where plaintiff was not a government employee but brought a claim for First Amendment retaliation under both the Free Speech Clause and the Petition Clause.

       The Court in <u>Eichenlaub</u> held that a plaintiff outside the public employee context can state a claim for First Amendment retaliation under the Free Speech Clause even if the speech in question did not relate to a matter of "public concern".  385 F.3d at 284.  However, because the Court affirmed the order granting summary judgment to defendant on plaintiff's cause of action pursuant to the Petition Clause, the Court did not "address whether the Petition Clause creates broader rights than the Free Speech Clause in the non-employee context."  <u>Id.</u> at 284 n.7.

       While the Third Circuit has not yet applied <u>San Filippo</u> in the non-employee context, the essential constitutional concern of the Court is present in cases in the employee and non-employee context alike.  The Court held:

> when government – federal or state – formally adopts a mechanism for redress of those grievances for which the government is allegedly accountable, it would seem to undermine the Constitution's vital purposes to hold that one who in good faith files an arguably meritorious 'petition' invoking that mechanism may be disciplined for such invocation by the very government that in compliance with the petition clause has given the particular mechanism its constitutional imprimatur.

<u>San Filippo</u>, 30 F.3d at 442.

       Likewise, although the petitioner will not be "disciplined" for such petitioning, the petitioner in a non-employee context who is harmed by the government in other ways for exercising this right should be afforded the same protection against retaliation.

(1972).  It is a form of freedom of expression, "directed to a government audience," with a long history predating freedoms of speech and of the press.  <u>Foraker v. Chaffinch</u>, 501 F.3d 231, 237 (3d Cir. 2007); <u>see also</u> <u>McDonald v. Smith</u>, 472 U.S. 479, 482, 105 S.Ct. 2787, 2789-2790, 86 L.Ed.2d 384, 388 (1985); <u>San Filippo</u>, 30 F.3d at 442-443.

A plaintiff can establish that the protected activity caused the retaliation by showing either: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." <u>Lauren W.</u>, 480 F.3d at 267.

Plaintiff alleges that he has exercised his right to petition by "questioning, complaining about, criticizing, and opposing the [PADEP] and defendants, including by appealing, litigating, and lobbying against the [PADEP] and defendants."[59] However, plaintiff fails to specify how or when he has exercised these rights.  Additionally, plaintiff lists numerous allegedly retaliatory acts taken by defendants.  Regarding most of those acts, plaintiff fails to state the dates on which they occurred.

Without such specificity, it is impossible to determine whether plaintiff exercised constitutionally-protected rights.  It is also impossible to determine whether the alleged

---

[59]     Amended Complaint, paragraph 108.

retaliatory acts occurred within the requisite temporal proximity to the protected activity, or whether the timing establishes the necessary causal link.

Furthermore, plaintiff's failure to include the dates of the alleged retaliatory acts renders it impossible to determine whether the acts fall within the statute of limitations. In section 1983 claims, federal courts apply the state's statute of limitations for personal injury. Sameric Corporation of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). The personal injury statute of limitations in Pennsylvania is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues when plaintiff "knew or should have known of the injury" upon which his action is based. Sameric, 142 F.3d at 599.

Plaintiff alleges the "continuing wrong" doctrine applies, which tolls the statute of limitations based upon defendants' continuing conduct. Under this doctrine, so long as the last act of defendant's continuing conduct is timely, plaintiff has a timely federal cause of action. Id. at 599.

However, the United States Court of Appeals for the Third Circuit addressed a similar argument in O'Connor v. City of Newark, 440 F.3d 125 (3d Cir. 2006). The plaintiff in O'Connor brought a section 1983 action, and plaintiff's claims hinged on whether the Court would apply the continuing wrong doctrine. The

Court held the question had been resolved by the United States Supreme Court in National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

The Morgan rule provides that discrete acts which are individually actionable may not be aggregated for statute of limitations purposes, whereas acts that are not individually actionable can be aggregated. O'Connor, 440 F.3d at 126-127. In O'Connor, the Third Circuit held that in First Amendment retaliation claims, all alleged acts of retaliation are discrete acts that are individually actionable.[60] Id. at 127-128. Therefore, in First Amendment retaliation cases the continuing wrong doctrine does not apply.

Because plaintiff's initial Complaint was filed April 13, 2010, it is proper to consider acts occurring in the two years prior to the filing of the Complaint while assessing plaintiff's claim for First Amendment retaliation. To the extent plaintiff is attempting to assert a retaliation claim based upon actions occurring before April 13, 2008, these claims would be time barred. See MFS Inc. v. DiLazaro, 2009 U.S.Dist. LEXIS 89125, at *32-33 (E.D.Pa. Sept. 28, 2009) (Slomsky, J.).

Accordingly, upon review of plaintiff's factual averments in support of the First Amendment retaliation claim

---

[60] While O'Connor focused on First Amendment retaliation in the employment litigation context, "it is apparent that the enunciated principles would apply in other contexts to cases brought under [section] 1983." MFS Inc., 2009 U.S.Dist. LEXIS 89125, at *30 n.8.

contained in Count I, I conclude that plaintiff does not satisfy the Twombly pleading standard because the averments regarding First Amendment retaliation are nothing more than "bald assertions" that fail to state a claim upon which relief can be granted. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-1430 (3d Cir. 1997).

Moreover, because of the lack of specificity, I conclude that defendants have not been provided with sufficient notice of the claims against them. In appropriate circumstances, the court has the discretion to direct more specific factual allegations from plaintiff. See Thomas v. Independence Township, 463 F.3d 285, 289 (3d Cir. 2006). This is a case where more specific factual allegations are necessary. Therefore, rather than dismissing plaintiff's claim for First Amendment retaliation with prejudice, I will permit plaintiff to provide more specificity in an amended complaint.

## C. Equal Protection

Count I of plaintiff's Amended Complaint also alleges that defendants violated plaintiff's right to Equal Protection. Defendants did not address the Equal Protection claim in their motion to dismiss, so plaintiff avers the claim must survive. Nonetheless, defendants assert in their reply brief that the

Equal Protection claim does not satisfy the pleading requirements set out in Iqbal.[61]

The Equal Protection clause of the Fourteenth Amendment to the Constitution of the United States provides that "[n]o state shall...deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV § 1. Where plaintiff is not a member of a recognized suspect class, such as race or gender, he may pursue his Equal Protection claim under a "class of one" theory. See Glenn v. Barua, 252 Fed.Appx. 493, 500 (3d Cir. 2007); see also Aardvark Childcare and Learning Center, Inc. v. Township of Concord, 401 F.Supp.2d 427, 446-447 (E.D.Pa. 2005) (Giles, C.J.).

To state a "class of one" Equal Protection claim, plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). Thus, "[i]f there was a rational basis for the action of the decisionmaker, there is no equal protection class of one violation...." Montanye v. Wissahickon School District, 399 F.Supp.2d 615, 620 (E.D.Pa. 2005) (Dubois, S.J.).

---

[61]    Defendants' Reply Brief in Support of Their Motion to Dismiss the Amended Complaint ("Reply Brief"), filed July 29, 2010, page 2.

In his Amended Complaint, plaintiff simply contends that "[d]efendants took unlawful action against plaintiff because plaintiff exercised his First and Fourteenth Amendment rights...to equal protection of law."[62]  Plaintiff alleges no facts to state a claim for violation of his right to Equal Protection.  Without such specificity, it is impossible to determine whether plaintiff can state a claim upon which relief can be granted.  This is precisely the type of conclusory or bare-bones allegation prohibited by <u>Fowler</u>, <u>supra</u>.

Because of plaintiff's sparse pleading, plaintiff has not satisfied the <u>Twombly</u> pleading standard.  However, defendants did not include this claim in their motion to dismiss. Therefore, because I am permitting plaintiff to amend other portions of his Amended Complaint, I will permit plaintiff to replead the Equal Protection claim in Count I in a second amended complaint according to the standard set forth above.

<u>D. Procedural Due Process</u>

Count I of plaintiff's Amended Complaint additionally avers defendants violated plaintiff's right to procedural due process.  Defendants contend that plaintiff has not established a prima facie case for deprivation of procedural due process.

To state a Section 1983 claim for deprivation of procedural due process, plaintiff must allege that: (1) he was

---

[62]     Amended Complaint, paragraph 4.

deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) the procedures available did not provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

### 1. Property Interest

The first issue is whether plaintiff has a protected property interest.[63] MFS Inc. v. DiLazaro, 2011 U.S.Dist. LEXIS 15440, at *143 (E.D.Pa. Feb. 16, 2011) (Slomsky, J.). To have a property interest under the Fourteenth Amendment, a person must have a "legitimate claim of entitlement" to the property. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972).

A property interest requires "more than an abstract need or desire" for the property, or a "unilateral expectation" of entitlement to the property. Id. Property interests are created "by existing rules or understandings that stem from an independent source such as state law," and the "types of interests protected as property are varied and, as often as not, [are] intangible." Stana v. School District of the City of Pittsburgh, 775 F.2d 122, 125 (3d Cir. 1985) (internal quotations omitted).

---

[63] Plaintiff only alleges that he was denied a property interest, so I will not address the other interests protected by procedural due process.

While property interests are usually "expressly created by state statutes or regulations," they "also arise from written or unwritten state or local government policies...." Id. (citing Perry v. Sindermann, 408 U.S. 593, 601-602, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570, 579 (1972)).

The United States Court of Appeals for the Third Circuit has held that fundamental property interests for procedural due process purposes are implicated by zoning decisions, building permits, or other issues requiring governmental permission for some intended use of land owned by plaintiff. Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority, 103 F.3d 1165, 1179 n.12 (3d Cir. 1997). See also MFS Inc., 2011 U.S.Dist. LEXIS 15440, at *144-145 n.50.

The Third Circuit has also held that a business itself is an established property right entitled to protection by the Fourteenth Amendment. College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 131 F.3d 353, 361 (3d Cir. 1997); see also MFS Inc., 2011 U.S.Dist. LEXIS 15440, at *145-146.

Plaintiff's private sewage treatment plant permit is issued by PADEP pursuant to the National Pollutant Discharge Elimination System, 25 Pa.Code §§ 92a.1 to 92a.104, and

authorized by the federal Clean Water Act, 33 U.S.C. § 1342.[64] The permit allows the discharge of pollutants from a point source into surface waters. 25 Pa.Code § 92a.1(b).

In support of plaintiff's contention that he has a property interest in his private sewage treatment plant permit, plaintiff relies on my decision in <u>M&M Stone Co. v. Commonwealth of Pennsylvania, Department of Environmental Protection</u>, 2008 U.S.Dist. LEXIS 76050, at *67-69, 76 (E.D.Pa. Sept. 29, 2008) (Gardner, J.). For the following reasons, I find plaintiff's reliance on my decision in <u>M&M Stone Co.</u> is misplaced.

In <u>M&M Stone Co.</u>, I applied the Third Circuit rule enunciated in <u>Independent Enterprises</u>, and determined that plaintiff had a property interest in a mining license because it implicated plaintiff's fundamental property interest in the use, control and enjoyment of its real property. <u>Id.</u> at *68-69. The "independent source" establishing plaintiff's property interest in the mining license in <u>M&M Stone Co.</u> was federal law. <u>See</u> <u>Stana</u>, <u>supra</u>.

However, in this case, neither federal law nor state law provide plaintiff with a property interest in the private sewage treatment plant permit.

_____

[64]     Private sewage treatment plant permits are also referred to as National Pollutant Discharge Elimination System permits, or NPDES permits. <u>See</u>, <u>e.g.</u>, 25 Pa.Code § 92a.9.

Federal law explicitly answers the question of whether a private sewage treatment plant permit creates a property interest. While neither party discussed this regulation, the United States Environmental Protection Agency issued a regulation on the National Pollutant Discharge Elimination System which states "[t]he issuance of a permit does not convey any property rights of any sort, or any exclusive privilege." 40 C.F.R. § 122.5.

Likewise, the private sewage treatment plant permit is not considered a property interest under state law. Permits generally are not recognized as property interests under Pennsylvania law, and instead are classified as mere privileges. See Tri-State Transfer Co., Inc. v. Department of Environmental Protection Tinicum Township, 722 A.2d 1129, 1133 n.3 (Pa.Commw. 1999); Crooks v. Pennsylvania Securities Commission, 706 A.2d 360, 362 (Pa.Commw. 1998); accord MFS Inc., 2011 U.S.Dist. LEXIS 15440, at *144-145 n.50.

More specifically, the Pennsylvania Administrative Code explicitly incorporates the above-referenced United States Environmental Protection Agency regulation on the National Pollutant Discharge Elimination System, which states that the issuance of a private sewage treatment plant does not convey any property rights of any sort. 25 Pa.Code § 92a.6.

Because the relevant permit is not classified as a property interest under either federal or state law, and neither party has referenced an independent source that creates a property interest, and I am aware of none, plaintiff has failed to show that he has a legitimate claim of entitlement to the permit as a property right or interest for procedural due process purposes.

Accordingly, I grant defendants' motion to dismiss this claim because plaintiff has no property interest in his permit.

## 2. Appropriate Procedures Available

Even assuming plaintiff has a property interest, the procedures available provided plaintiff due process of law.

Procedural due process is satisfied when a state affords a full judicial mechanism with which to challenge the administrative decision at issue. <u>Bello v. Walker</u>, 840 F.2d 1124, 1128 (3d Cir. 1998), <u>abrogated on other grounds by</u>, <u>United Artists Theatre Circuit, Inc. v. Township of Warrington, PA</u>, 316 F.3d 392, 394 (3d Cir. 2003).

If adequate process is provided by state procedures, procedural due process is satisfied whether or not a plaintiff avails itself of the provided appeal mechanism. <u>DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell</u>, 53 F.3d 592, 597 (3d Cir. 1995), <u>abrogated on other grounds by</u>,

<u>United Artists Theatre Circuit, Inc.</u>, 316 F.3d at 400-401

(internal citations and quotations omitted).[65]

        "The availability of a full judicial mechanism to

challenge the administrative decision to deny an application,

even an application that was wrongly denied, preclude[s] a

determination that the decision was made pursuant to a

constitutionally defective procedure."  <u>Midnight Sessions,</u>

<u>Ltd. v. City of Philadelphia</u>, 945 F.2d 667, 681 (3d Cir. 1991),

<u>abrogated on other grounds by</u>, <u>United Artists</u>, 316 F.3d at

400-401.

        Moreover, the available state procedure need not

provide all the relief available under a section 1983 cause of

action in order for the available state procedure to be

Constitutionally adequate.  <u>Parratt v. Taylor</u>, 451 U.S. 527,

543-544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420, 434 (1981),

<u>overruled on other grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327,

106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

        The Supreme Court has set forth three factors to

evaluate concerning whether the process accorded was

Constitutionally adequate:

---

        [65]    A court may take judicial notice of records outside the four
corners of a complaint, including records of administrative and court
proceedings.  <u>See</u> <u>Pension Benefit Guaranty Corporation v. White Consolidated</u>
<u>Industries, Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  Thus, I take judicial
notice that plaintiff appealed to the Commonwealth of Pennsylvania
Environmental Hearing Board the decision of PADEP to not renew his permit.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976).

Plaintiff contends that he has satisfied the Mathews test. First, plaintiff alleges that defendants expressed their intent not to renew his permit two years before plaintiff was required to submit a renewal application, which nonrenewal was reaffirmed in the April 15, 2009 Order to Tilden Township.[66]

Second, plaintiff avers that this early decision deprived him of the opportunity to apply for renewal or to challenge defendants' decision.[67] Third, plaintiff claims neither defendants nor PADEP would be burdened by affording him the opportunity to first submit a permit application renewal before denying the application.

Under Pennsylvania law, plaintiff has the right to make a challenge before the Commonwealth of Pennsylvania Environmental Hearing Board ("EHB") from any adverse decision taken by PADEP against his permit for a private sewage treatment plant. 35 P.S.

---

[66]    Amended Complaint, paragraphs 39 and 51.

[67]    Amended Complaint, paragraphs 47 and 48.

§ 7514;[68]  see also Commonwealth of Pennsylvania, Department of
Environmental Protection v. Schneiderwind, 867 A.2d 724, 727
(Pa.Commw. 2005).  Furthermore, under 42 Pa.C.S.A. § 763,
plaintiff has the right to appeal any adverse decision of the
Environmental Hearing Board to the Commonwealth Court of
Pennsylvania.  Pennsylvania Coal Mining Association v. Watt,
562 F.Supp. 741, 744 (M.D.Pa. 1983).

     Here, plaintiff not only had the right to challenge
PADEP's actions before the Environmental Hearing Board, he did
so.  Plaintiff has taken numerous appeals to the Environmental
Hearing Board from both the pre-application permit renewal denial
and, after plaintiff submitted a timely application for renewal,
the permit renewal denial.[69]  Even assuming defendants erred in
communicating their intent to deny plaintiff's future application
for permit renewal, plaintiff still had the "availability of a
full judicial mechanism" to challenge this administrative
decision.  Midnight Sessions, Ltd., 945 F.2d at 681.

---

[68]     Act of July 13, 1988, P.L. 530, § 4, as amended, 35 P.S. § 7514.

[69]     Plaintiff intervened in Tilden Township's appeal of the PADEP
March 27, 2008 Order directing Tilden Township to plan to provide public sewer
services to Pleasant Hills.

     In appeals that were consolidated into EHB Docket No. 2010-033-L,
plaintiff appealed from the PADEP April 15, 2009 Order directing Tilden
Township to update its Act 537 Plan to include public sewer
services to Pleasant Hills, and plaintiff appealed the March 9, 2010 Consent
Order and Agreement between the PADEP and Tilden Township on the public sewer
issue.  Plaintiff also appealed the June 21, 2010 letter he received from
PADEP denying his application for permit renewal.  See Reply Brief, Exhibit F.

The Environmental Hearing Board is a neutral arbiter, and plaintiff was represented by counsel before the Board. Plaintiff filed various motions and exhibits, and the Environmental Hearing Board heard the testimony of numerous experts. The Environmental Hearing Board also issued written opinions with their findings.

Thus, I conclude that plaintiff enjoyed a full judicial mechanism with which to challenge the administrative decision against him regarding his permit renewal application, and therefore plaintiff cannot state a claim for violation of his procedural due process rights.

Accordingly, because plaintiff does not possess a property right in the permit issued to him and because plaintiff is entitled to a full judicial mechanism to challenge the administrative decisions of PADEP, I grant defendants' motion to dismiss and I dismiss plaintiff's procedural due process claim.

### Count II (42 U.S.C. § 1985)

Count II of plaintiff's Amended Complaint asserts Constitutional claims actionable against defendants through 42 U.S.C. § 1985(3). Section 1985(3) permits an action to be brought where defendants formed a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

Defendants contend that plaintiff has not established a prima facie case for violation of this section.

To state a claim under section 1985(3), plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States"

United Brotherhood of Carpenters and Joiners, Local 610 v. Scott, 463 U.S. 825, 828-829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049, 1054 (1983) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-103, 91 S.Ct. 1790, 1798-1799, 29 L.Ed.2d 338, 348 (1971)).

Section 1985(3) does not create any substantive rights, but it allows individuals to enforce substantive rights against conspiring parties.  Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).

The United States Supreme Court has made clear that section 1985(3) does not provide a cause of action for "all tortious, conspiratorial interferences with the rights of others," or create "general federal tort law."  Farber, 440 F.3d at 135 (quoting Griffin, 403 U.S. at 101-102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348).  Instead, plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

action" in order to state a claim.  <u>Griffin</u>, 403 U.S. at 102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348.

The United States Court of Appeals for the Third Circuit identified two requirements to establish "class-based invidiously discriminatory animus": a plaintiff must allege that (1) the conspiracy was motivated by discriminatory animus against an identifiable class and (2) the discrimination against the identifiable class was invidious.  <u>Farber</u>, 440 F.3d at 135.

To satisfy the first prong, the "identifiable class" cannot be "defined as simply the group of victims of the tortious action."  <u>Id.</u> at 136 (internal quotation omitted).  Instead, the class needs to have an "independent identifiable existence" to a reasonable person that is readily distinguishable by an objective criterion or set of criteria clearly indicating who is a member of the group and who is not.  <u>Id.</u>  The Third Circuit has recognized a few groups that qualify as an identifiable class for these purposes, including classes based on racial discrimination and discrimination against women and the mentally retarded.  <u>Id.</u> at 137.

The second prong requires invidious discrimination against the identifiable class.  Discrimination based on race unquestionably qualifies as "invidious" for the purposes of section 1985(3), while discrimination based on commercial or economic animus does not rise to the level of "invidious."

Id. at 138 (citing Griffin, 403 U.S. at 102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348 and Scott, 463 U.S. at 838, 103 S.Ct. at 3361, 77 L.Ed.2d at 1060).  The United States Supreme Court has held that the

> nature of the invidiously discriminatory animus __
> Griffin had in mind is suggested both by the language
> used in that phrase (invidious . . . tending to excite
> odium, ill will, or envy; likely to give offense; esp.,
> unjustly and irritatingly discriminating, [] ) and by
> the company in which the phrase is found (there must be
> *some racial, or perhaps otherwise class-based,*
> invidiously discriminatory animus [] ).

Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 274, 113 S.Ct. 753, 761-763, 122 L.Ed.2d 34, 49 (1993) (internal citations and quotations omitted) (emphasis in original).

Invidious discrimination typically must be motivated by the immutable characteristics that define a class, which bear "no relation to [plaintiff's] ability to perform or contribute to society."  Farber, 440 F.3d at 142 (internal quotation omitted).

Here, plaintiff appears to allege that defendants conspired to deprive him of his Constitutional rights under the First Amendment, the Equal Protection Clause, and the Due Process Clause.[70]  However, plaintiff does not allege class-based discrimination.  Furthermore, plaintiff does not plead any facts tending to show that he is a member of an identifiable class, or

---

[70]    See Amended Complaint, paragraphs 4, 22, 37, 58, 87, 119, and 121.

that defendants acted with invidious discrimination against him because he was a member of an identifiable class.

Instead, plaintiff's claim appears to fall into the general category of "'tortious, conspiratorial interferences with the rights of others'" for which no remedy can be granted pursuant to section 1985(3). <u>Id.</u> at 135 (quoting <u>Griffin</u>, 403 U.S. at 101, 91 S.Ct. at 1798, 29 L.Ed.2d at 348). Accordingly, because plaintiff has not pled facts sufficient to state a prima facie claim for violation of section 1985(3), I grant defendants' motion to dismiss Count II and dismiss that Count from the Amended Complaint.

<u>Qualified Immunity</u>

Defendants allege that they are entitled to qualified immunity on Counts I and II.

Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565, 573 (2009).

In resolving a claim for qualified immunity, a court must decide: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a Constitutional right; and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. <u>Pearson</u>, 555 U.S. 223,

129 S.Ct. at 815-816, 172 L.Ed.2d at 573 (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  A court may address either of these prongs first, based on the particular circumstances of the case.  <u>Pearson</u>, 555 U.S. 223, 129 S.Ct. at 818, 172 L.Ed.2d at 576.

The Constitutional right at issue is "clearly established" where the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.  <u>Wilson v. Layne</u>, 526 U.S. 603, 614-615, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818, 830 (1999) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987)).  A court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the official to determine whether a reasonable state actor could have believed his conduct was lawful.  <u>MFS Inc.</u>, 2011 U.S.Dist. LEXIS 15440, at *191 (internal quotation omitted).

If a reasonable government official is not on notice that his conduct under the circumstances is clearly unlawful, then application of qualified immunity is appropriate.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  <u>Ray v. Township of Warren</u>, 626 F.3d 170, 173 (3d Cir. 2010) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 278

(1986)).  In making this determination, a court must conduct the inquiry in light of the "specific context of the case", and not as a "broad general proposition".  <u>Saucier</u>, 533 U.S. at 201, 121 S.Ct. at 2156, 150 L.Ed.2d at 281.

The United States Court of Appeals for the Third Circuit has held that the determination of immunity should be made as early as possible in civil actions against government officials.  <u>Thomas</u>, 463 F.3d at 295.  Qualified immunity provides immunity from suit instead of merely providing a defense to liability.  <u>Pearson</u>, 555 U.S. 223, 129 S.Ct. at 815, 172 L.Ed.2d at 573 (internal quotation omitted).

Qualified immunity will be upheld on a motion to dismiss "only when the immunity is established on the face of the complaint".  <u>Thomas</u>, 463 F.3d at 291 (internal quotation omitted).  Therefore, the threshold question of qualified immunity should be resolved before discovery is allowed.  <u>Thomas</u>, 463 F.3d at 291 (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 411 (1982)).

The Third Circuit has acknowledged that there is a tension between resolving questions of qualified immunity at the earliest possible time and the pleading standard required to

survive a motion to dismiss.[71]  Thomas, 463 F.3d at 299;

Haniotakis v. Nassan, 727 F.Supp.2d 388, 404 (W.D.Pa. 2010).

The Third Circuit has held that plaintiffs do not have a heightened pleading standard, and that it is a defendant's burden to prove qualified immunity.  Thomas, 463 F.3d at 292. Nonetheless, the factual record in the "vast majority" of cases may need further development, making it "generally unwise to venture into a qualified immunity analysis at the pleading stage."  Newland v. Reehorst, 328 Fed.Appx. 788, 791 n.3 (3d Cir. 2009).

In cases where more robust allegations are necessary to evaluate a claim for qualified immunity, the Third Circuit explained that district courts have several options, including: (1) ordering a plaintiff to reply to the defendant's answer pleading qualified immunity; or (2) defendant moving for a more definite statement under Federal Rule of Civil Procedure 12(e) with respect to the conduct of which plaintiff complains. Thomas, 463 F.3d at 300-301.

## A. First Amendment Retaliation

Applying the first prong of the Pearson/Saucier definition of qualified immunity, as discussed above, plaintiff

---

[71]     While Iqbal had not been decided at the time of the Thomas case, which focused on notice pleading, it is unlikely that the holding in Thomas has been abrogated.  See Haniotakis, 727 F.Supp.2d at 404.  The tension still exists because it is possible for a claim to survive a motion to dismiss under Iqbal while not providing sufficient facts to allow the court to conduct a qualified immunity analysis.

has alleged insufficient facts to determine whether his rights under the Petition Clause have been violated.  Accordingly, the Amended Complaint also contains insufficient facts to evaluate defendants' claim for qualified immunity.  Because the first prong of the <u>Pearson</u>/<u>Saucier</u> test requires plaintiff to show that defendant has violated his Constitutional rights, defendants' claim for qualified immunity can only be adequately evaluated should plaintiff provide more specificity in an amended complaint regarding his First Amendment retaliation claim.

Moreover, concerning the second prong of the qualified immunity definition, plaintiff's Amended Complaint contains insufficient facts to evaluate whether the right at issue was clearly established at the time of defendants' alleged misconduct.  The court is required to review defendants' alleged actions together with the information which defendants possessed, in order to determine whether a reasonable PADEP officer could have believed that his alleged conduct was lawful in light of clearly established law.  <u>See</u> <u>Wilson</u>, 526 U.S. at 615, 119 S.Ct. at 1700, 143 L.Ed.2d at 831.

However, the Amended Complaint does not contain sufficient information to determine whether or how defendants violated plaintiff's Constitutional rights.  The Amended Complaint has insufficient factual allegations concerning whether defendants' alleged actions were in response to plaintiff's

exercise of his Petition Clause rights.  Accordingly, pursuant to Federal Rule of Civil Procedure 12(e), I direct that plaintiff provide a more definite statement of his First Amendment free speech retaliation claims so that the qualified immunity issue may be resolved expeditiously.  See Debrew v. Auman, 354 Fed.Appx 639, 642 (3d Cir. 2009).

### B. Equal Protection

Applying the Pearson/Saucier definition of qualified immunity to plaintiff's Equal Protection claim reveals the same deficiencies as discussed above in connection with plaintiff's First Amendment retaliation claim.  Because of insufficient factual allegations in the Amended Complaint on this claim, I cannot determine whether plaintiff's Equal Protection Constitutional rights have been violated.  Also, I cannot determine whether reasonable officials in defendants' positions would understand that they were violating plaintiff's clearly established rights.  Therefore, pursuant to Federal Rule of Civil Procedure 12(e), plaintiff shall provide a more definite statement of his Equal Protection claim so that the qualified immunity issue may be resolved expeditiously.  See Debrew, supra.

### C. Procedural Due Process and 42 U.S.C. § 1985(3)

As discussed above, I conclude plaintiff has not sufficiently stated a claim that his Constitutional rights have

been violated through a deprivation of procedural due process or by an unlawful conspiracy pursuant to section 1983(5).

If, construing the facts in the light most favorable to plaintiff, no constitutional right would have been violated were the allegations established, "'there is no necessity for further inquiries concerning qualified immunity.'"  <u>Reedy v. Evanson</u>, 615 F.3d 197, 223-224 (3d Cir. 2010) (quoting <u>Saucier</u>, 533 U.S. at 201, 121 S.Ct. at 2156, 150 L.Ed.2d at 281).

Because defendants committed no Constitutional violations, "they are entitled to qualified immunity and dismissal of the constitutional claims."  <u>MFS Inc.</u>, 2011 U.S.Dist. LEXIS 15440, at *189.  Accordingly, in addition to failing to state a claim for which relief can be granted, plaintiff's claims for deprivation of procedural due process and violation of section 1985(3) are dismissed because defendants have qualified immunity on those claims.

<u>Count III</u>

<u>A. Intentional Interference with Contractual Relations</u>

Count III of plaintiff's Amended Complaint asserts a Pennsylvania state-law claim for intentional interference with contractual relations.  Defendants contend that plaintiff cannot establish a prima facie case because plaintiff cannot show the existence of a contract, and furthermore, defendants are protected by sovereign immunity.

The tort of intentional interference with contractual relations has been adopted by the Supreme Court of Pennsylvania. Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 482 Pa. 416, 431, 393 A.2d 1175, 1183 (1978). Under this tort, defendants may be held liable for "intentionally and improperly interfer[ing] with the performance of a contract...between another and a third person by inducing or otherwise causing the third person not to perform the contract...." Id. at 1183 (quoting Restatement (Second) of Torts § 766 (Tentative Draft No. 23, 1977)).[72]

As recognized by the Third Circuit, the elements of intentional interference with a contractual relation under Pennsylvania law, whether existing or prospective, are as follows:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
>
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant;
>
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

---

[72]    As noted by the Third Circuit, although the Supreme Court of Pennsylvania relied on a tentative draft of the Restatement (Second) of Torts § 766, the final version is the same in substance. See Windsor Securities, Inc. v. Hartford Life Insurance Company, 986 F.2d 655, 659 n.6 (3d Cir. 1993).

Crivelli v. General Motors Corporation, 215 F.3d 386, 394
(3d Cir. 2000) (citing Strickland v. University of Scranton,
700 A.2d 979, 985 (Pa.Super. 1997)).

Plaintiff contends that defendants intentionally
interfered with the Consent Order between plaintiff and Tilden
Township, which was entered into on November 4, 1999 after
litigation in the Commonwealth Court of Pennsylvania.  Plaintiff
alleges the Consent Order allowed him to operate a private sewage
treatment plant for Pleasant Hills.

Initially, defendants contend that a Consent Order is
not a contract for the purposes of intentional interference with
a contractual relation.

The United States Supreme Court has stated that consent
decrees have the attributes of both a contract, because they are
arrived at by mutual agreement of the parties, and a judicial
decree, because they are entered after approval by the court.
Local Number 93, International Association of Firefighters v.
City of Cleveland, 478 U.S. 501, 519, 106 S.Ct. 3063, 3073,
92 L.Ed.2d 405, 421 (1986).  Accordingly, a consent decree can be
regarded as a "contract" or as a "judgment" depending on the
context within which the issue arises.  478 U.S. at 519,
106 S.Ct. at 3073-3074, 92 L.Ed.2d at 421.

The Supreme Court has further held that a "consent
decree or order is to be construed for enforcement purposes

basically as a contract." <u>United States v. ITT Continental Baking Co.</u>, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148, 162 (1975); <u>see also</u> <u>McDowell v. Philadelphia Housing Authority (PHA)</u>, 423 F.3d 233, 239-240 (3d Cir. 2005); <u>Washington Hospital v. White</u>, 889 F.2d 1294, 1300 (3d Cir. 1989).

Likewise, when one party seeks to enforce the terms of the consent order, Pennsylvania courts have construed the consent order as a contract for the purposes of enforcing the agreement. <u>See</u> <u>Lower Frederick Township v. Clemmer</u>, 518 Pa. 313, 328, 543 A.2d 502, 510 (Pa. 1988); <u>Cecil Township v. Klements</u>, 821 A.2d 670, 673-674 (Pa.Commw. 2003). In stating the principles for construing a consent decree, the Supreme Court of Pennsylvania has held that "a consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties - a contract binding the parties thereto to the terms thereof." <u>Lower Frederick Township</u>, 518 Pa. at 328, 543 A.2d at 510 (internal citation and quotation omitted).

Because plaintiff's claim seeks to enforce the terms of the Consent Order, I will regard the Consent Order as a contract for the purposes of plaintiff's claim.

Second, defendants argue that even if the Consent Order is a contract, the provision granting plaintiff the right to operate the private sewage treatment plant at Pleasant Hills is

unenforceable under Pennsylvania law because it limits the police powers of the state and is therefore void.

According to the Restatement (Second) of Torts § 766, where a contract provision is void, a defendant will not be held liable for causing its breach for the purposes of intentional interference with a contractual relation.[73]  Pennsylvania courts have also recognized the proposition that a contract cannot "abridge the police powers of the Commonwealth which protect the general welfare and the public interest."  Carlino v. Whitpain Investors, Whitpain Township, 52 Pa.Commw. 145, 150, 415 A.2d 461, 464 (Pa.Commw. 1980), aff'd, Carlino v. Whitpain Investors, 499 Pa. 498, 453 A.2d 1385 (Pa. 1982).

Under Pennsylvania law, "the police powers of the Commonwealth may not be abrogated or limited through the terms of a contract, and any contractual term purporting to do so is void or voidable."  Phoenix Resources, Inc. v. Duncan Township, 155 F.R.D. 507, 512 (M.D.Pa. 1994).

In Phoenix Resources, Inc, United States District Court Judge James F. McClure, Jr., declined to approve a proposed

---

[73]     See Restatement (Second) of Torts § 766, comment on Clause (f), which states that "[t]he particular agreement must be in force and effect at the time of the breach that the actor has caused; and if for any reason it is entirely void, there is no liability for causing its breach."  Pennsylvania courts have relied on section 766 in defining intentional interference with a contractual relation.  See, e.g., Adler, Barish, Daniels, Levin & Creskoff, 482 Pa. at 431-432, 393 A.2d at 1183.

consent decree between a mining corporation and a township because, among other reasons, the consent decree potentially abdicated the police powers of the township. Judge McClure held that the consent decree would contractually bind the township to allow plaintiffs to use additional land as a landfill. This result would cause the township to lose the ability to regulate the additional land in the future because the land would be subject to a statute which preempts local land use regulations. Hence, the proposed consent decree would limit the police powers of the township in violation of Pennsylvania law.

Here, regulating sewage disposal for the general welfare is within the police powers of Pennsylvania,[74] which power is largely exercised by the PADEP pursuant to the Pennsylvania Clean Streams Law, 35 P.S. §§ 691.202 and 691.307,[75] and the Sewage Facilities Act, 35 P.S. §§ 750.1-750.20a.[76]

Pursuant to the Sewage Facilities Act, every municipality must submit to PADEP an officially adopted plan for sewage service areas within the jurisdiction of the municipality.

---

[74] See, for example, Act of July 22, 1974, P.L. 621, § 3, as amended, 35 P.S. § 750.3, which provides that one of the purposes of the Sewage Facilities Act is to "protect the public health, safety and welfare of its citizens through the development and implementation of plans for the sanitary disposal of sewage waste."

[75] Act of July 31, 1970, P.L. 653, §§ 5 and 9, as amended, 35 P.S. §§ 691.202 and 691.307.

[76] Act of January 24, 1966, P.L. 1535, No. 537, as amended, 35 P.S. §§ 750.1-750.20a.

35 P.S. § 750.5.[77]  PADEP has the discretion to decide when a plan is inadequate to meet the sewage disposal needs of a municipality.  25 Pa. Code § 71.12.  Accordingly, PADEP has the power to require a municipality to so revise its plan regarding sewage disposal at its discretion.  Id.

Additionally, the private sewage treatment plant permit issued by PADEP in 2005 for Pleasant Hills contains a clause that it becomes null and void should municipal sewerage facilities become available.[78]  Thus, the private sewage treatment plant permit itself was subject to the discretion of PADEP because it could be revoked should PADEP require a municipality to change the sewage options available to the permit holder.

Nonetheless, the Consent Order between Tilden Township and plaintiff purports to give him the power to operate a private sewage treatment plant for a specified period of time.  However, as discussed above, PADEP has the ultimate authority to decide what sewage options are appropriate for a municipality.  Therefore, this provision of the Consent Order abrogates the police powers of PADEP to regulate sewage disposal.  PADEP has

---

[77]    Act of July 22, 1974, P.L. 621, § 3, as amended, 35 P.S. § 750.5.

[78]    See Motion to Dismiss, Exhibit 1, page 13, Part C, 1 (D).

Because plaintiff's Amended Complaint makes extensive reference to the private sewage treatment plant permit, his claims are based upon the permit, and no party disputes the authenticity of the permit document, it is appropriate for the court to consider this document even though plaintiff did not attach it to his Amended Complaint.  See In re Burlington Coat Factory Securities Litigation, 114 F.3d at 1426; Pension Benefit, 998 F.2d at 1196.

-53-

the authority, and in fact, exercised that authority with regard to Tilden Township, to require a municipality to amend its municipal sewage plan to provide public sewers in PADEP's discretion.

Accordingly, to the extent plaintiff alleges defendants caused PADEP to interfere with this provision of the Consent Order, plaintiff fails to state a claim for intentional interference with a contractual relation because that provision is void. A defendant cannot be liable for causing breach of a void contractual provision. See Restatement (Second) of Torts § 766. As noted above, Pennsylvania courts have held that contractual provisions are void if they abrogate the police powers of the Commonwealth to provide for the general welfare of its citizens are void. See Phoenix Resources, Inc., supra.

### B. Sovereign Immunity

Even in the absence of a determination that the relevant provision of the Consent Order is void, defendants contend that plaintiff fails to state a claim upon which relief can be granted for another reason. Defendants argue they are entitled to sovereign immunity, thus barring plaintiff's state-law tort claim.

Article I, § 11 of the Pennsylvania Constitution provides that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the legislature

may by law direct." The Pennsylvania legislature has provided sovereign immunity for state officials and employees except where the General Assembly specifically waived immunity. 1 Pa.C.S. § 2310.

Sovereign immunity has been waived by the General Assembly in nine categories of negligence cases, none of which are applicable here.[79] Sovereign immunity applies only to Commonwealth employees acting within the scope of their employment. Estate of Smith v. Marasco, 2006 U.S.Dist. LEXIS 58475, at *14 (E.D.Pa. Jul. 12, 2006) (Stengel, J.); Moore v. Commonwealth of Pennsylvania, Department of Justice, 114 Pa.Commw. 56, 63, 538 A.2d 111, 115 (Pa.Commw. 1988).

Accordingly, plaintiff's claim can proceed only if defendants were not acting within the scope of their employment, as PADEP employees.[80] While the question of whether an individual has acted within the scope of his employment is typically a question of fact for a jury, the issue can be decided as a matter of law where the facts and inferences drawn from the

---

[79] The nine exceptions concern the following topics: (1) vehicle liability, (2) medical-professional liability, (3) care, custody, or control of personal property, (4) Commonwealth real estate, highways, and sidewalks, (5) potholes and other dangerous conditions, (6) care, custody, or control of animals, (7) liquor store sales, (8) national guard activities, and (9) toxoids and vaccines. See section 8522 of the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541-8564.

[80] No party disputes that defendants are Commonwealth employees for the purposes of sovereign immunity.

complaint are not in dispute.  <u>Strothers v. Nassan</u>,

2009 U.S.Dist. LEXIS 30208, at *27 (W.D.Pa. Apr. 9, 2009).

In order to determine whether defendants were acting

within the scope of their employment, the Superior Court of

Pennsylvania has followed the standard set in the Restatement

(Second) of Agency § 228.  <u>Butler v. Flo-Ron Vending Co.</u>,

383 Pa.Super. 633, 646, 557 A.2d 730, 736 (Pa.Super. 1989).[81]

Conduct is considered within the scope of employment if:

> (1) it is of a kind and nature that the employee
> is employed to perform; (2) it occurs
> substantially within the authorized time and space
> limits; (3) it is actuated, at least in part, by a
> purpose to serve the employer; and (4) if force is
> intentionally used by the employee against
> another, the use of force is not unexpected by the
> employer.

<u>Costa v. Roxborough Memorial Hospital</u>, 708 A.2d 490, 493

(Pa.Super. 1998) (citing Restatement (Second) of Agency § 228).

The fourth criterion has no bearing on this case.

Applying the other three criteria, the Amended Complaint fails to

sufficiently allege that defendants have taken any actions

outside the scope of their employment in allegedly intentionally

interfering with the Consent Order.

Plaintiff alleges that defendants called a meeting to

discuss compliance issues at Pleasant Hills on February 5, 2008,

_____

[81]     Although the Supreme Court of Pennsylvania has not yet adopted
section 228, the United States Court of Appeals for the Third Circuit has
predicted that the Supreme Court of Pennsylvania will follow <u>Butler</u> and adopt
section 228.  <u>Aliota v. Graham</u>, 984 F.2d 1350, 1358 (3d Cir. 1993).

where defendants first announced their intention to allegedly interfere with the Consent Order by failing to renew plaintiff's private sewage treatment plant permit.[82]  Following this meeting, defendants allegedly took enforcement actions against Pleasant Hills and Cedar Manor, while acting as PADEP agents.  Those actions furthered defendants' goal of connecting Pleasant Hills to a public sewer in Tilden Township.  Utilizing their authority as PADEP agents, defendants also caused Tilden Township to amend its sewage plan to begin accommodations for Pleasant Hills.[83]

All of these acts (enforcing Pennsylvania laws and regulations regarding sewage, deciding whether to renew a permit for a private sewage treatment plant, and deciding that Tilden Township should provide greater public sewer options), are of the kind and nature that PADEP employees are employed to perform.

Furthermore, all of the acts alleged in the Amended Complaint occurred while defendants were acting in their official capacities, on the job, as PADEP agents.  Plaintiff does not allege any facts showing that defendants acted outside of the authorized times or places where a PADEP agent would be expected to act.

---

[82]     Amended Complaint, paragraph 38.

[83]     Amended Complaint, paragraphs 49 and 55.

Moreover, all of defendants' alleged actions to interfere with the Consent Order are, according to the Amended Complaint, motivated at least in part by a desire to serve the employer. Plaintiff alleges that PADEP wanted to address various sewage treatment issues within Tilden Township in early 2008.[84] The Amended Complaint alleges that defendants determined that requiring Tilden Township to accommodate the sewage from Pleasant Hills would benefit Tilden Township in the resolution of its various sewage treatment issues.[85]

Defendants are given the discretion, in their official capacity, to decide when a municipality should amend its sewage plan. 25 Pa.Code § 71.12. While plaintiff also alleges additional motives for defendants' actions, it cannot be said that their actions to connect Pleasant Hills to a public sewer were not motivated at least in part by a desire to serve their employer.

This case is similar to <u>Feliz v. Kintock Group</u>, 297 Fed.Appx. 131 (3d Cir. 2008). In that case, the United States Court of Appeals for the Third Circuit affirmed the district court's dismissal of state-law claims based on sovereign immunity. Defendants were Pennsylvania Department of Corrections agents, and plaintiff was in their custody. <u>Id.</u> at 134.

---

[84]     Amended Complaint, paragraph 31.

[85]     Amended Complaint, paragraphs 32-35.

Plaintiff was placed in a pre-release facility and complained that he was being denied certain entitlements to which he was due. Subsequently he was removed from the pre-release facility, allegedly because of misconduct. Id.

Plaintiff, in Feliz, however, alleged that the real reason for his removal was to retaliate against him for contacting an attorney to help assist him in obtaining the entitlements he claimed he was being denied. Id. The Third Circuit agreed with the district court that defendants were entitled to sovereign immunity on their motion to dismiss because, while plaintiff "may take issue with the manner in which [defendants] performed their duties, there can be no question that the Commonwealth defendants were acting within the scope of their employment...." Id. at 137.

Likewise, district courts which have conducted this analysis have come to similar conclusions. See MFS Inc., 2011 U.S.Dist. LEXIS 15440, at *1207-219; St. Germain v. Pennsylvania Liquor Control Board, 2000 U.S.Dist. LEXIS 334, at *10-11 (E.D.Pa. Jan. 19, 2000) (Buckwalter, J.). Most relevantly, in Jones v. Pennsylvania Minority Business Development Authority, 1998 U.S.Dist. LEXIS 5795, at *5-7 (E.D.Pa. Apr. 23, 1998) (Waldman, J.), my former colleague District Judge Jay C. Waldman, now deceased, dismissed plaintiff's complaint on the basis of sovereign immunity.

In _Jones_, plaintiff alleged that defendants, who were employees of the Pennsylvania Minority Business Development Association, denied her a loan because she was mentally disabled. _Id._ at *1. Plaintiff further alleged that defendants acted outside the scope of their employment because they had a prejudicial animus against her in denying her a loan. _Id._ at *6.

In analyzing defendants' defense of sovereign immunity in _Jones_, Judge Waldman held that "even assuming defendants harbored 'negative attitudes' and 'malicious motives' towards mentally disabled persons when they reviewed plaintiff's loan request, their involvement in the decisions regarding the loan nevertheless clearly appear to have been within their duties as Commonwealth employees." _Id._ at *7.

Similar to _Feliz_ and _Jones_, in this case plaintiff Perano has not alleged that defendants took any actions which were not performed on the job, and were not of the nature of actions that defendants as employees of PADEP are employed to perform. Instead, plaintiff attacks defendants' motives in taking those actions, which, when performed in the course of employment in service of the employer, do not change the analysis regarding whether defendants were acting within the scope of their employment.

Therefore, because defendants' actions were taken in the service of their employer in functions they were hired to

perform, I conclude that defendants are entitled to sovereign immunity, and Count III must be dismissed for this reason as well.

## Abstention

Alternatively, defendants request the court to abstain from considering plaintiff's claims at all because plaintiff has similar claims pending before the Commonwealth of Pennsylvania, Environmental Hearing Board.

The Third Circuit has stated the following regarding abstention:

> Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or agency will have the opportunity to decide the matters at issue.  The doctrine is rooted in concerns for the maintenance of the federal system and represents an extraordinary and narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them.

Hi Tech Trans, LLC v. New Jersey, 382 F.3d 295, 303 (3d Cir. 2004) (internal citations and quotations omitted).

Abstention should be rarely invoked and is appropriate only in exceptional and limited circumstances.  Addiction Specialists, Inc. v. The Township of Hampton, 411 F.3d 399, 408 (3d Cir. 2005).

In support of their request to have this court abstain from this matter defendants cite <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). <u>Younger</u>, and its progeny, are based upon principles of equity, comity and federalism. <u>Ivy Club v. Edwards</u>, 943 F.2d 270, 278 (3d Cir. 1991). <u>Younger</u> abstention is a prudential limitation on a federal court's jurisdiction which applies when a party seeks to have a federal court interfere with ongoing state proceedings. <u>Marran v. Marran</u>, 376 F.3d 143, 154 (3d Cir. 2004). As formulated by the Third Circuit:

> Abstention under <u>Younger</u> is appropriate only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Even if the necessary three predicates exist, however, <u>Younger</u> abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted.

<u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir. 1989) (internal citations omitted).

## A. Ongoing State Proceedings

Applying the _Younger_ factors to this case, there is no dispute that there are ongoing state proceedings which are judicial in nature. _See_ 35 P.S. §§ 7513-7514 [86] which establishes the Pennsylvania Environmental hearing Board as "an independent quasi-judicial agency", § 7513(a). Plaintiff has filed numerous appeals relating to the denial of his private sewage treatment plant permit which are currently pending before the Environmental Hearing Board. Thus, there are ongoing state proceedings that are judicial in nature.

## B. Important State Interests

The second _Younger_ factor requires an analysis of whether the ongoing state proceedings implicate important state interests. Where there is a nexus between the claims asserted in the federal action and the claims or defenses asserted in the state action, the federal action will interfere with the ongoing state proceedings. _Gwynedd Properties, Inc. v. Lower Gwynedd Township_, 970 F.2d 1195, 1201-1202 (3d Cir. 1992).

However, federal proceedings that merely parallel ongoing state proceedings, but which do not interfere with such proceedings, do not raise the problems of comity which _Younger_

---

[86]    Act of July 13, 1988, P.L. 530, §§ 3 and 4, as amended, 35 P.S. §§ 7513-7514.

sought to avoid.  Id. at 1201; see also Schall, 885 F.2d at 112.
Younger abstention may not be appropriate where "the federal
plaintiff seeks only prospective relief without seeking to annul
either previous state court judgments or the effect of the
judgments." Gwynedd Properties, Inc, 970 F.2d at 1201.

Defendants argue that enforcing state environmental
policies is an important state activity, which includes
Pennsylvania's interest in enforcing environmental laws and
regulations pursuant to the procedures it has developed.
Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376
(1977); Grode v. The Mutual Fire, Marine And Inland Insurance
Company, 8 F.3d 953, 956 (3d Cir. 1993); Williams v. The Red Bank
Board of Education, 662 F.2d 1008, 1016 (3d Cir. 1981).
Plaintiff does not appear to dispute that the state proceedings
implicate important state interests.

Nonetheless, the Third Circuit has held that the
federal proceeding must provide some interference with the
ongoing state proceedings.  Gwynedd Properties, Inc.,
970 F.2d at 1203.  In Gwynedd Properties, Inc., the Third Circuit
declined to exercise Younger abstention on some of plaintiff's
claims.  The district court dismissed plaintiff's complaint
entirely, which included a section 1983 claim, on Younger
abstention grounds because plaintiff had several state court

proceedings regarding land-use pending against defendant township.  Id. at 1196.

In reversing in part, the Third Circuit held that it was significant that plaintiff did not seek to enjoin any state proceedings, the federal proceedings did not challenge the legality of any township or municipal ordinance, and the individual defendants were not parties in their individual capacities in any of the state proceedings.  Id. at 1201.  The Court held:  "Unlike the state proceedings in which the legality of land use ordinances are at issue, here [plaintiff] alleges that the defendants have *applied* these ordinances maliciously in order to deprive [plaintiff] of its federal constitutional and statutory rights."  Id. at 1202 (emphasis in original).

Nonetheless, the Third Circuit held in Gwynedd Properties, Inc. that while plaintiff has raised federal claims that do not interfere with state proceedings, certain aspects of plaintiff's requested relief may potentially interfere with the state proceedings if the relief is fashioned too broadly.  Id. at 1205 n.13.  The Court determined that Younger abstention would be appropriate to the extent that the injunction which plaintiff seeks would nullify the state court proceedings or would result in a de facto review of the township's zoning decisions at issue in the state court proceedings.  Id. at 1204.

In our case, similar to <u>Gwynedd Properties, Inc.</u>, plaintiff's federal action is brought against defendants in their individual capacities, while the pending state court proceedings before the Environmental Hearing Board are brought against PADEP. Also similar to <u>Gwynedd Properties, Inc.</u>, plaintiff does not seek to enjoin any state proceedings, nor does plaintiff challenge the legality of any environmental laws or regulations.

In this federal case, plaintiff seeks numerous forms of relief, including injunctive and monetary relief from defendants in their individual capacities.  Plaintiff seeks an Order (1) requiring defendants to publically retract false information they allegedly provided and spread to unnamed others; (2) prohibiting defendants from participating in PADEP enforcement actions concerning plaintiff; and (3) barring defendants from plaintiff's property.[87]

As in <u>Gwynedd Properties, Inc.</u>, plaintiff has raised federal claims which do not interfere with pending state actions. The state claims involve the legality of the actions taken by PADEP, whereas the federal claims involve the legality of the actions taken by defendants individually.  Nonetheless, it is possible that the injunctive relief which plaintiff seeks could interfere with the pending Environmental Hearing Board proceedings.  The Environmental Hearing Board proceedings do

_____

[87]     Amended Complaint, paragraph 8.

involve the same subject matter, namely, the failure to renew plaintiff's private sewage treatment plant permit.[88]

In granting plaintiff's requested relief, it is possible that the federal claims would require the court to determine the lawfulness of the PADEP permit (i.e. granting permits) actions and enforcement actions. Plaintiff may be granted relief from defendants individually, but this may involve the nullification of the EHB proceedings or result in a de facto review of PADEP's decisions at issue in the EHB proceedings. Gwynedd Properties, Inc., supra; see also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 13-14, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1, 17-18 (1987).

Thus, because important state interests are involved, the second prong of the Younger abstention test is satisfied.

C. Opportunity to Raise Federal Claims in State Court

Plaintiff alleges that the Environmental Hearing Board proceedings do not provide him with an opportunity to raise his federal Constitutional claims.

Abstention is appropriate where plaintiff is able to raise his federal claims in the state court proceeding and to appeal any adverse decision through the state appellate system.

---

[88]    See Reply Brief, Exhibit F.

See <u>DiPietro v. New Jersey Family Support Payment Center</u>, 375 Fed.Appx. 202, 205 (3d Cir. 2010).

The Environmental Hearing Board has the authority to hear and rule upon certain federal constitutional claims. <u>Delaware County Safe Drinking Water Coalition, Inc. v. McGinty</u>, 2007 US.Dist. LEXIS 55327, at *42 n.18 (E.D.Pa. July 27, 2007) (Pratter, J.); <u>see also</u> <u>Newlin Corporation v. Commonwealth of Pennsylvania, Department of Environmental Resources</u>, 134 Pa.Commw. 396, 403, 579 A.2d 996, 1000 (1990).

For example, the Environmental Hearing Board has exclusive jurisdiction to determine whether or not an unconstitutional taking has occurred. <u>Middle Creek Bible Conference Inc. v. Department of Environmental Resources</u>, 165 Pa.Commw. 203, 216, 645 A.2d 295, 301 (1994).

However, the jurisdiction of the Environmental Hearing Board in reviewing actions of PADEP is limited to holding hearings and issuing adjudications regarding PADEP orders, licenses, permits, or decisions. 35 P.S. § 7514(a); <u>see</u> <u>also</u> <u>Commonwealth of Pennsylvania, Department of Environmental Protection v. Schneiderwind</u>, 867 A.2d 724, 727 (Pa.Commw. 2005).

Because plaintiff's federal claims concern more than just PADEP official actions denying the renewal of his private sewage treatment plant permit, the Environmental Hearing Board lacks the jurisdiction to hear plaintiff's claims. For example,

plaintiff's claims regarding First Amendment retaliation against defendants in their individual capacities do not specifically concern a PADEP decision denying his permit.

The Environmental Hearing Board has recognized its own limited jurisdiction. In a case where plaintiff brought section 1983 claims, similar to the federal claims plaintiff alleges in our case, the Board held that it is beyond its jurisdiction to hear claims alleging "improper or illegal motives" on the part of Commonwealth officials in making decisions. <u>Westtown Sewer Company v. Commonwealth of Pennsylvania, Department of Environmental Resources</u>, 1992 EHB 979, 1992 Pa.Envirn. LEXIS 106, at *1 (Jul. 30, 1992).

The Environmental Hearing Board stated that it does not have the jurisdiction to hear section 1983 claims:

> As we have taken pains to point out many times in the past we are not a court of general juris- diction but are a quasi-judicial administrative tribunal with only that adjudicatory authority legislatively bestowed on us by the Environmental Hearing Board Act....By Section 4 of this Act, 34 P.S. § 7514, we are authorized to hear appeals on orders, permits, licenses or decisions; we are not authorized to conduct proceedings under federal law whether it involves Section 1983 or any other section of "42 U.S. Code"....[O]ur jurisdiction does not extend to enforcement of these allegedly violated rights. That is for another forum.

<u>Id.</u> at *23-24.

Therefore, based upon the Environmental Hearing Board's own ruling, it cannot provide plaintiff an adequate opportunity to raise his federal constitutional claims in that forum.

Because plaintiff cannot adequately raise his Constitutional claims in the parallel state proceedings, <u>Younger</u> abstention is not appropriate. Accordingly, defendants' motion to dismiss on the basis of <u>Younger</u> abstention is denied.

<u>CONCLUSION</u>

For all the foregoing reasons, I grant in part and deny in part defendants' motion to dismiss.

I dismiss plaintiff's procedural due process claim contained in Count I, as well as the entirety of Counts II and III of plaintiff's Amended Complaint, for failure to state a claim upon which relief can be granted. In addition, I dismiss plaintiff's procedural due process claim contained in Count I and plaintiff's conspiracy claim in Count II of the Amended Complaint because defendants have qualified immunity. I also dismiss Count III because defendants are protected by sovereign immunity.

I deny defendants' motion to dismiss defendant Lee McDonnell, their motion to dismiss on the ground of <u>Younger</u> abstention, and their motion to dismiss plaintiff's claim for injunctive relief.

Finally, I dismiss the remainder of Count I of plaintiff's Amended Complaint without prejudice for plaintiff to file a second amended complaint with respect to the Equal Protection claim and the First Amendment free speech retaliation claim. In addition, pursuant to Federal Rule of Civil Procedure 12(e), plaintiff shall provide a more definite statement of his Equal Protection and First Amendment free speech retaliation claims in Count I so that I can expeditiously resolve defendants' claim for qualified immunity on those claims if raised by defendants in a motion to dismiss plaintiff's second amended complaint.